UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CLAUDA A. GARNER-HON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09-CV-0277-CVE-FHM |
| | ) | |
| ST. JOHN HEALTH SYSTEM, INC., and | ) | |
| PHYSICIANS SUPPORT SERVICES, INC. | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Now before the Court is the Motion for Summary Judgment of Defendants St. John Health System, Inc. and Physicians Support Services, Inc. with Supporting Brief (Dkt. # 21). Defendants request summary judgment on plaintiff's claim under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq., her claim of wrongful discharge in violation of an Oklahoma public policy, also known as a Burk tort,[1] and her claim of intentional infliction of emotional distress.

**I.**

Clauda Garner-Hon was hired by St. John Health System, Inc. (St. John), a non-profit medical facility based in Tulsa, Oklahoma, as a nurses' aid in 1986. In 1998, Garner-Hon was transferred to a St. John affiliate, Physicians Support Services, Inc. (PSSI). Around 2000 or 2001,

---

[1] The Oklahoma Supreme Court recognized a claim for wrongful discharge in violation of an established Oklahoma public policy in Burk v. K-Mart Corp., 770 P.2d 24 (Okla. 1989), and this type of claim has become known as a Burk tort. Plaintiff alleges that defendants violated the public policy of Oklahoma by engaging in age discrimination, and the Oklahoma Supreme Court has held that age discrimination is prohibited by the public policy of Oklahoma. See Saint v. Date Exchange, 145 P.3d 1037 (2006).

Garner-Hon was assigned to Central Referral, a division of PSSI, to work as a customer service representative. The job description for plaintiff's position listed 22 specific duties, and some of Garner-Hon's responsibilities were to maintain patient, employee, physician, and corporate confidentiality, maintain a professional attitude, and treat her co-workers respectfully. Dkt. # 21, Ex. B, at 2-3.

On July 11, 2007, Garner-Hon took at least two calls from a patient concerning the scheduling of an MRI, and the patient may have called as many as three times. Dkt. # 21-3, at 1-2. Garner-Hon claims the patient was upset because she had already been transferred to several other customer service representatives before speaking to Garner-Hon. Dkt. # 21-2, at 36. During the final phone call, the patient asked to be transferred to a different customer service representative, and Garner-Hon transferred the call to Jennifer Woolridge, a co-worker in the same office. The patient told Woolridge that Garner-Hon was "rude" and "hateful" to the patient.[2] Woolridge informed Garner-Hon of the patient's complaint, and Garner-Hon claims that she attempted to explain to Woolridge that the patient was upset for reasons other than Garner-Hon's conduct. Dkt. # 21-3, at 4. Another PSSI employee, Tiffany Sparks, heard Woolridge and Garner-Hon discussing the patient's complaint, and Sparks attempted to intervene in the conversation. Garner-Hon claims that Sparks was "irate" and started yelling at Garner-Hon. Id. at 5. Garner-Hon told Sparks that the patient's alleged complaint did not concern Sparks, and Sparks should return to her office. Garner-

---

[2]   Garner-Hon disputes that patient referred to her as "hateful." In her deposition, Garner-Hon testified that she could not recall the precise language used by Woolridge to describe the patient's complaint, and the patient may have used the word "hateful." Dkt. # 21-3, at 4. For the purpose of defendants' motion for summary judgment, the key event is that the patient made a complaint to Woolridge about Garner-Hon's conduct, and it is not material whether the patient called Garner-Hon "rude," "hateful," or both.

Hon claims that she did not raise her voice and calmly asked Sparks to leave. Id. at 6. Other employees informed LaFonda Bruner, Garner-Hon's supervisor, of the conversation among Woolridge, Sparks, and Garner-Hon, and Bruner came out of her office to investigate. Dkt. # 21-4, at 7. Bruner heard Sparks and Garner-Hon arguing and she asked them to stop. Bruner testified in her deposition that Garner-Hon continued to yell at Sparks, and Bruner again asked Sparks and Garner-Hon to stop yelling. Garner-Hon claims that Bruner did not observe any of the conversation and was in a meeting the entire time. Dkt. # 28, Ex. A, at 15.

On July 12, 2007, PSSI received an e-mail and phone call from a doctor's office, and Bruner learned that the same patient, who had described Garner-Hon as "rude" and "hateful," made a separate complaint to her physicain about Garner-Hon. Another PSSI manager, Dana Nicholson, forwarded the following e-mail to Bruner:

> Dana this pt is upset because she received a message on her voice mail w/only people talking in the background. She saw on her caller ID it was from CRD so she called the number back [illegible] . . . . The lady who answered was "Claude" and she states she was very hateful. She was upset that the pt called her phone line. She told her that her number was on caller ID and apologized if she got the wrong person, she just wanted info on her MRI. Then she told her that 2 letters had been sent to her so she should have this info, but the 2 letters were generated today 7/11. Pt wanted to make a complaint on "Claude". She said she was so hateful she had to hang up on her and when she called back she spoke to Jennifer who clarified everything for her and was very nice and helpful.

Dkt. # 21-5, at 7. Bruner also spoke to Nicholson about the patient's complaint concerning Garner-Hon's conduct.

Also on July 12, 2007, Bruner disciplined all three employees involved in the confrontation on July 11, 2007, and documented the discipline issued to each employee. Bruner met with all three employees and informed Garner-Hon, Woolridge, and Sparks that the human resources department wanted to terminate all three employees, but Bruner was able to "save" their jobs. Dkt. # 28, Ex.

3

A, at 18. Bruner found that Woolridge "[b]ecame involved in a dispute between two other employees that caused tension amongst the staff," and issued a "coaching worksheet" to Woolridge. Dkt. # 21-5, at 4. Sparks received an oral reminder for "engag[ing] in a verbal confrontation with a co-worker that escalated into yelling by other staff . . . ." Id. at 3. Garner-Hon received a written reminder because she "[b]ecame involved in a confrontation with a co-worker that escalated into yelling and calling names." Bruner noted that Garner-Hon refused to end the confrontation and continued to yell at other staff members after being asked to stop. Id. at 2. The discipline issued to Garner-Hon did not concern the patient's complaint that Garner-Hon was "rude" and "hateful." However, during this meeting, Garner-Hon stated that she called the patient back and apologized to the patient for any perceived rudeness.[3] Id. at 19. Garner-Hon admitted that she looked in the patient's confidential medical records to obtain the patient's phone number. Dkt. # 21-3, at 14-15. This was a violation of St. John's confidential information policy, which provides:

> Any use or disclosure of confidential health information in an unauthorized manner is prohibited and may lead to discipline, up to and including termination. This includes unauthorized access (which includes sharing passwords or logging in for another employee), removing, copying, faxing, e-mailing, or otherwise distributing confidential information. Employees who have access to medical information, billing records, etc., must take special care with matters of confidentiality and follow St. John Health System policies and procedures when using or disclosing patient health information. Patient information may only be viewed or accessed as needed to perform your job duties and in accordance with St. John Health System policies and procedures . . . .

---

[3] During her deposition, plaintiff initially testified that the patient called her back and she denied calling the patient to discuss the patient's complaint. Dkt. # 21-3, at 8. Defense counsel produced a letter written by plaintiff to Sister M. Therese Gottschalk, president and CEO of St. John, in which plaintiff stated three times that she called the patient back. See Dkt. # 21-5, at 9-20. Plaintiff acknowledged that she wrote the letter and that it was written shortly after she was fired. Dkt. # 21-3, at 12-15. Plaintiff later testified that she called the patient to discuss the patient's complaint and there is no factual dispute on this issue. Id. at 16.

> Unauthorized use or disclosure of patient health information is not only a breach of health system ethics and policy, but could involve you and St. John in legal action. Violation of patient confidentiality may result in termination.

Dkt. # 21-7, at 3.

After learning that Garner-Hon called a patient, placed a patient in the middle of an employee disciplinary matter, and violated St. John's confidentiality policy, Bruner contacted Regina Hancock, Director, and Jim Withrow, Human Resources Director, to discuss plaintiff's additional disciplinary infractions. Bruner initially held a conference call with Hancock and Withrow to notify them of Garner-Hon's conduct, and Bruner and Withrow met separately to determine what action should be taken. Withrow and Bruner decided that Garner-Hon's employment should be terminated, and Bruner fired Garner-Hon on July 13, 2007. The official record of Garner-Hon's termination states that Garner-Hon was:

> Terminated due to conduct unbecoming of a SJMC employee, that went against our Values and Action and Mission. Putting a patient in the middle of a department confrontation.

Dkt. # 21, Ex. I, at 2. Garner-Hon wrote a letter to Gottschalk concerning Garner-Hon's termination and suggested that Bruner had been looking for a way to fire Garner-Hon for some time. Dkt. # 21-5, at 9-20.

On November 11, 2007, Garner-Hon filed a charge of discrimination with the Equal Employment Opportunity Commission alleging that her employment with St. John and PSSI was terminated due to age discrimination. Garner-Hon has alleged additional facts not directly related to the events of July 11 to 13, 2007, in support of her age discrimination claim. Garner-Hon claims that Bruner told another PSSI employee sometime during 2007 that "she was going to clean house and get rid of the [employees] that had been there the longest." Dkt. # 21-2, at 18. Garner-Hon

allegedly heard about Bruner's statement from an employee named Janet Chikahorn.[4]  Id.  Garner-Hon claims that Bruner was harder on older employees, and has identified Carol Corder, Sheree Adams, and Cari Henderson as employees over 40 years of age who were treated differently than less qualified employees under the age of 40.  Garner-Hon also alleges that Bruner disciplined her more harshly than Woolridge and Sparks, and did not follow St. John's program of progressive discipline when terminating Garner-Hon's employment.  Garner-Hon claims that the lesser discipline imposed on Woolridge and Sparks for the same conduct shows that defendants' stated reason for terminating her employment is pretextual.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993).  The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  Id. at 327.

---

[4]  Plaintiff states that the employee's name is actually Janet Chotinikorn.  Dkt. # 28, at 7. However, it is spelled Chikahorn in the transcript of plaintiff's deposition testimony and the parties have not produced any official records identifying this employee, and the Court will refer to the employee as Chikahorn in this Opinion and Order.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

Defendants seek summary judgment on all of plaintiff's claims. Defendants argue that plaintiff has not met her burden to show that defendants' legitimate, non-discriminatory reason for terminating plaintiff's employment is pretextual, and they are entitled to summary judgment on plaintiff's ADEA claim and her Burk tort. Defendants also argue that plaintiff has produced no evidence suggesting that defendants engaged in extreme or outrageous conduct or that plaintiff suffered severe emotional distress as a result of defendants' conduct. Plaintiff responds that genuine issues of material fact precludes summary judgment on her claims, and defendants' motion for summary judgment should be denied.

**A.**

Defendants argue that plaintiff cannot show that defendants' legitimate, non-discriminatory reason for terminating her employment is pretextual, and they are entitled to summary judgment on plaintiff's ADEA claim and her Burk tort. Plaintiff responds that defendants have not come forward with a legitimate, non-discriminatory explanation for plaintiff's discharge and defendants' stated reason was pretextual.

Plaintiff has produced no direct evidence of age discrimination and, when reviewing an age discrimination claim based on circumstantial evidence, the Court must apply the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this framework, the plaintiff bears the initial burden to establish a prima facie case of discrimination. Sanders v. Southwestern Bell Telephone, L.P., 544 F.3d 1101, 1105 (10th Cir. 2008). To establish a prima facie case, a plaintiff must show: (1) that she is within the protected age group; (2) that she was performing satisfactory work; (3) that she was discharged; and (4) her position was filled by a younger worker. McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1128 (10th Cir. 1998). If the plaintiff meets her burden, the employer must "come forward with some legitimate, non-discriminatory reason for the adverse employment action." Hinds v. Sprint/United Management Co., 523 F.3d 1187, 1195 (10th Cir. 2008). If the employer produces a legitimate, non-discriminatory reason for its decision, the burden shifts to the plaintiff "to prove by a preponderance of the evidence that the legitimate reasons offered by the [employer] were not its true reasons, but were a pretext for discrimination." Rivera v. City & County of Denver, 365 F.3d 912, 920 (10th Cir. 2004). The mixed-motive analysis established in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), does not apply to claims under the ADEA, and a plaintiff asserting an age discrimination claim under the

8

ADEA retains the "burden of persuasion to establish that age was the 'but-for' cause of the employer's adverse action." Gross v. FBL Financial Servs., Inc., 129 S.Ct. 2343, 2351 (2009). Gross does not require the Court to disregard the McDonnell Douglas burden shifting framework, but it does alter the plaintiff's ultimate burden of persuasion to show that age was the but-for cause of the alleged adverse employment action. Gorzynski v. Jetblue Aitways Corp., ___ F.3d ___, 2010 WL 569367 (2d Cir. Feb. 19, 2010); Smith v. City of Allentown, 589 F.3d 684, 690 (3d Cir. 2009); Geiger v. Tower Automotive, 579 F.3d 614 (6th Cir. 2009).

Defendants do not challenge that plaintiff can establish a prima facie case of age discrimination. Dkt. # 21, at 18. Thus, the Court assumes that plaintiff can establish a prima facie case of age discrimination and the burden shifts to defendants to "articulate some legitimate, nondiscriminatory reason" for plaintiff's termination. McDonnell Douglas Corp., 411 U.S. at 802-03. "The defendant's burden is merely to articulate through some proof a facially nondiscriminatory reason for the termination; the defendant does not at this stage of the proceeding need to litigate the merits of the reasoning, nor does it need to prove that the reason relied upon was bona fide, nor does it need prove that the reasoning was applied in a nondiscriminatory fashion." EEOC v. Flasher Co., Inc., 986 F.2d 1312, 1316 (10th Cir. 1992). The Tenth Circuit has described the defendant's burden at this stage of the proceedings as "exceedingly light." Zamora v. Elite Logistics, Inc., 478 F.3d 1160, 1165 (10th Cir. 2007). Defendants have come forward with a legitimate, non-discriminatory reason for terminating plaintiff's employment. On July 11, 2007, a patient complaint to Woolridge that plaintiff was "rude" and "hateful," and this complaint led to a confrontation among plaintiff, Woolridge, and Sparks. All three employees were disciplined for arguing loudly and disrupting the workplace. Plaintiff later admitted that she called the patient back to discuss the patient's complaint

9

and obtained the patient's phone number from the patient's confidential medical records. The combination of the events described by defendants – a patient complaint against plaintiff, a confrontation with two co-workers, plaintiff's admission that she violated a patient's confidentiality by improperly accessing the patient's medical records, and plaintiff's phone call to the patient that put the patient in the middle of an internal disciplinary matter – constitute a legitimate, non-discriminatory reason for terminating plaintiff's employment.[5]

At this stage of the proceeding, the burden shifts to plaintiff to show that defendants' explanation for terminating plaintiff's employment is pretextual. Plotke v. White, 405 F.3d 1092,1099 (10th Cir. 2005); Salguero v. City of Clovis, 366 F.3d 1168, 1176 (10th Cir. 2004). "A plaintiff demonstrates pretext by showing . . . that the employer's proffered explanation is unworthy of credence." Stinnett v. Safeway, Inc., 337 F.3d 1213, 1218 (10th Cir. 2003) (quoting Rea v. Martin Marietta Corp., 29 F.3d 1450, 1455 (10th Cir. 1994)). A plaintiff typically attempts to satisfy her burden by "revealing 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable

---

[5] Plaintiff asserts that St. John violated its progressive disciplinary policy and should not have issued her a written reminder on July 12, 2007 and, without this written reminder, St. John could not have terminated her employment on July 13, 2007. However, St. John's confidentiality policy permitted it to terminate an employee who violated this policy simply due to a breach of the confidentiality policy. At this stage of the McDonnell Douglas analysis, the Court does not weigh defendants' legitimate, non-discriminatory reason, and defendants' stated reason is more than sufficient to meet defendants' burden of production. The Court will consider plaintiff's allegations concerning violations of the progressive disciplinary policy and disparate discipline among employees on the issue of pretext, but these arguments do not defeat defendants' legitimate, non-discriminatory reason. The Court has advised plaintiff's counsel on at least two prior occasions that challenges to the veracity of a defendant's legitimate non-discriminatory reason go to the issue of pretext. Amos v. Centrilift, 2008 WL 4058031, *15 n.12 (N.D. Okla. Aug. 26, 2008); Maston v. St. John Health System, Inc., 2008 WL 295815, *5 (N.D. Okla. Jan. 30, 2008).

factfinder could rationally find them unworthy of credence.'" Mackenzie v. City & County of Denver, 414 F.3d 1266, 1278 (10th Cir. 2005) (quoting Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997)). A plaintiff's "mere conjecture" that the employer's explanation is pretext is not a sufficient basis to deny a motion for summary judgment. Branson v. Price River Coal Co., 853 F.2d 786, 772 (10th Cir. 1988). In the context of an age discrimination claim, the burden of persuasion remains with plaintiff at all times to show that age was the but-for cause of plaintiff's termination. Smith, 589 F.3d at 691.

Plaintiff claims that St. John violated its progressive disciplinary system by issuing a written reminder to her on July 12, 2007 and St. John disciplined younger employees who committed "identical" violations less harshly than plaintiff, and that these issues create a genuine issue of material fact as to pretext. Dkt. # 28, at 15-18. Defendants respond that plaintiff's argument ignores the totality of the circumstances leading to plaintiff's discharge, and her conduct was more egregious than the conduct of her co-workers. St. John also argues that plaintiff could have been terminated solely for her breach of St. John's confidentiality policy.

The Tenth Circuit has recognized that a plaintiff may establish pretext by showing that "the employer 'treated [the plaintiff] differently from other similarly-situated employees who violated work rules of comparable seriousness' in order to show that the employer failed to follow typical company practice in its treatment of the plaintiff." Swackhammer v. Sprint/United Management Co., 493 F.3d 1160, 1168 (10th Cir. 2007). An employee is similarly situated if the employee "deals with the same supervisor and is subject to the 'same standards governing performance evaluation and discipline." Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1232 (10th Cir. 2000). "Work histories, company policies applicable to the plaintiff and the comparator, and other

11

relevant employment circumstances should be considered when determining whether employees are similarly situated." Green v. New Mexico, 420 F.3d 1189, 1194 (10th Cir. 2005). Plaintiff has the burden to produce evidence that employees are similarly situated. Riggs v. AirTran Airways, Inc., 497 F.3d 1108, 1121 n.4 (10th Cir. 2007).

Plaintiff has not carried her burden to show that similarly situated employees violated "work rules of comparable seriousness," and the discipline imposed on plaintiff, Woolridge, and Sparks does not show that defendants' legitimate, non-discriminatory reason for terminating plaintiff's employment was pretextual. There is no dispute that all three employees were supervised by Bruner, but plaintiff has not shown that Woolridge and Sparks engaged in similar misconduct. Bruner found that Sparks "engaged in a verbal confrontation with a co-worker that escalated into yelling by other staff involved," and Woolridge "[b]ecame involved in a dispute between two other employees that caused tension amongst staff." Dkt. # 21-5, at 3-4. Plaintiff "[b]ecame involved involved in a confrontation with a co-worker that escalated into yelling and calling names [and] [o]nce the co-worker tried to stop the disagreement [plaintiff] continued to yell at staff." Plaintiff, Woolridge, and Sparks were all disciplined for their conduct and none was fired as a result of their confrontation. Plaintiff received a written reminder, which is somewhat more severe than the discipline imposed on Woolridge and Sparks. However, Bruner found that plaintiff continued the confrontation after Woolridge and Sparks attempted to end the dispute, and Bruner reasonably determined that plaintiff's conduct was more egregious than that of either Woolridge or Sparks. Even if plaintiff was disciplined somewhat more harshly for her conduct in the July 11, 2007 confrontation than Woolridge or Sparks, she ignores the fact that she also accessed a patient's medical records in violation of St. John's confidentiality policy and used this information to call a patient. Bruner

12

found that plaintiff violated the confidentiality policy and placed a patient in the middle of an employee disciplinary matter. Neither Woolridge or Sparks committed similar misconduct, and they are not similarly situated to plaintiff for a pretext analysis.

Plaintiff claims that Bruner told Chikahorn that she was going to "clean house" and get rid of the employees who had been employed the longest, and this shows that the true cause of plaintiff's termination was not her conduct on July 11, 2007. Plaintiff did not depose Chikahorn and the only evidence supporting plaintiff's claim that Bruner made the "clean house statement" to Chikahorn is plaintiff's deposition testimony. This statement is double hearsay and it is unlikely that this statement would be admissible at a jury trial, and this evidence may not be considered when ruling on defendants' motion for summary judgment. Fisher v. City of Las Cruces, 584 F.3d 888, 897 n.3 (10th Cir. 2009). Even if the Court were to consider the "clean house" statement, it does not establish that Bruner intended to "clean house" based on the age on any employee. Bruner allegedly intended to get rid of employees who had been employed the "longest." While this may indirectly encompass older employees, Bruner referred to the tenure of employment, not an employee's age, and this does not show that Bruner sought to fire older employees.

Plaintiff also testified in her deposition that Bruner was harder on older employees, and she identified Carol Corder, Sheree Adams, and Cari Henderson as older employees who were treated less favorably than younger employees. Plaintiff claims that Bruner made Corder's job more difficult by changing guidelines or job requirements. Dkt. # 21-2, at 23. However, plaintiff acknowledged that any changes were made on a departmental basis and applied equally to all employees. Id. at 24. Plaintiff testified that Bruner humiliated or degraded Corder, but plaintiff never personally witnessed any incident and could not describe Bruner's conduct toward Corder.

13

Id. at 25. Plaintiff claims that Bruner engaged in similar conduct with Adams and was always "finding fault" with Adams' work. Id. at 26. Plaintiff believes that Bruner tried to get Henderson fired on several occasions because "Bruner . . . [is] just that way," but plaintiff could not remember any specific incidents involving Henderson. Plaintiff claims that Bruner would hold departmental meetings without informing older employees, but plaintiff could not recall the dates of any such meeting and she could specify which employees were excluded from the alleged meetings. Dkt. # 21-3, at 24-26. Plaintiff could also not explain why she was more qualified than younger employees who allegedly received more favorable treatment and she could not identify any specific incidents showing that younger employees were actually treated better than older employees. Id. at 32-33. These allegations of discriminatory conduct are too vague to create a genuine issue of material fact that Bruner treated older employees differently than younger employees, and Bruner's alleged mistreatment of Corder, Adams, and Henderson does not support plaintiff's argument that her termination was pretext for age discrimination.

Considering the totality of the circumstances, the Court finds that plaintiff has not produced any evidence showing that a genuine issue of material fact exists suggesting that defendants' legitimate, non-discriminatory reason for terminating her employment was pretextual. Even if plaintiff were correct that defendants should not have issued her a written reminder on July 12, 2007, this standing alone is not sufficient to show pretext. See Randle v. City of Aurora, 69 F.3d 441, 454 (10th Cir. 1995) ("The mere fact that an employer failed to follow its own internal procedures does not necessarily suggest that the employer was motivated by illegal discriminatory intent or that the substantive reasons given by the employer for its employment decision were pretextual."). Plaintiff fails to take into account that she was fired for engaging in a confrontation with co-workers,

improperly accessing a patient's confidential medical records, and calling the patient back and placing the patient in the middle of an employment dispute. Plaintiff has not produced any evidence that defendants retained similarly situtated, younger employees who engaged in similar misconduct. Under Gross, plaintiff must show that age was the but-for cause of her termination, and she has not done so. Therefore, defendants are entitled to summary judgment on plaintiff's claims of age discrimination.[6]

**B.**

Defendants argue that they are entitled to summary judgment on plaintiff's claim of intentional infliction of emotional distress, because plaintiff has not shown that defendant engaged in extreme and outrageous conduct or that she suffered severe emotional distress. Plaintiff responds that defendants' decision to terminate her for "minor" misconduct was extreme and outrageous, and she alleges that she suffered severe emotional distress as a result of defendants' conduct. Dkt. # 28, at 19.

Oklahoma courts have recognized a cause of action for intentional infliction of emotional distress, also known as the tort of outrage. See Gaylord Entertainment Co. v. Thompson, 958 P.2d 128, 149 (Okla. 1998). The action is governed by the narrow standards laid out in the Restatement Second of Torts, § 46. Id. In Breeden v. League Services Corp., 575 P.2d 1374 (Okla. 1978), the Oklahoma Supreme Court explained:

---

[6] Plaintiff does not offer any argument concerning the application of Gross to her Burk tort under Oklahoma law. However, the Court has found no evidence suggesting that age was a factor in plaintiff's termination, and defendants are entitled to summary judgment on her Burk tort, even assuming that she is not required to prove that age was the but-for cause for her termination to survive summary judgment on a Burk tort.

15

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arounse his resentment against the actor, and lead him to exclaim, 'Outrageous!' The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.

Id. at 1376. To state a claim, a plaintiff must allege that "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." Schovanec v. Archdiocese of Oklahoma City, 188 P.3d 158, 175 (Okla. 2008) (quoting Computer Publications, Inc. v. Welton, 49 P.3d 732, 735 (Okla. 2002)). Under Oklahoma law, the trial court must assume a "gatekeeper role" and make an initial determination that the defendant's conduct "may be reasonably regarded as sufficiently extreme and outrageous to meet the Restatement § 46 standards." Trentadue v. United States, 397 F.3d 840, 856 n.7 (10th Cir. 2005) (applying Oklahoma law). If reasonable persons could reach differing conclusions in the assessment of the disputed facts, the Court should submit the claim to the jury to determine whether the defendant's conduct could result in liability. Id. The Court is to make a similar threshold determination with regard to the fourth prong, the presence of severe emotional distress. Id.

In cases arising out of the workplace, Oklahoma appellate courts have found that a defendant engaged in extreme and outrageous conduct only when that defendant intentionally and persistently engaged in a course of conduct that harmed the plaintiff. See Computer Publications, 49 P.3d at 736 (claim should have been submitted to a jury when plaintiff presented evidence that harassment lasted more than two years and caused plaintiff to quit her job, move and repeatedly change phone numbers); Miner v. Mid-America Door Co., 68 P.3d 212 (Okla. Civ. App. 2002) (employer's alleged

16

failure to reassign the plaintiff after learning of workplace harassment, even if unreasonable, was not extreme and outrageous); Gabler v. Holder & Smith, Inc., 11 P.3d 1269 (Okla. Civ. App. 2000) (noting that workplace harassment rarely rises to the level of extreme and outrageous conduct); Mirzaie v. Smith Cogeneration, Inc., 962 P.2d 678 (Okla. Civ. App. 1998) (employer's conduct was not extreme and outrageous when, inter alia, the plaintiff's manager made derogatory sexual remarks about the plaintiff, woke plaintiff up in the middle of the night to do unnecessary work, and terminated him two hours before his wedding); Zahorsky v. Community Nat'l Bank of Alva, 883 P.2d 198 (Okla. Civ. App. 1994) (employer not liable for intentional infliction of emotional distress when an employee forced the plaintiff to have sex with him and employer failed to fire the employee, even though the employer allegedly knew about the conduct).

In this case, plaintiff alleges that defendants fired her for "minor conduct issues" and this was extreme and outrageous considering plaintiff's twenty years of employment with St. John. Dkt. # 28, at 19. Plaintiff offers no other argument that defendants' conduct was extreme and outrageous. The Court has already determined that plaintiff's misconduct was relatively severe and defendant had a legitimate basis to believe that plaintiff's termination was warranted. Even if the Court were to accept plaintiff's characterization of her misconduct as "minor," this would not be sufficient by itself to show that defendants engaged in extreme and outrageous conduct. Defendants did not intentionally and consistently take actions designed to inflict emotional distress on plaintiff, and plaintiff's allegations, even if true, do not rise to the level of extreme and outrageous conduct. The Court also finds that plaintiff has not produced evidence that she suffered severe emotional distress.

Plaintiff claims that she lost her home after she was fired[7] and it was difficult for her to find a job after she was fired by defendants, and this resulted in severe emotional distress. These are practical and financial consequences that resulted from losing her job, but these events do not support plaintiff's claim that she suffered severe emotional distress. Thus, defendants are entitled to summary judgment on plaintiff's claim of intentional infliction of emotional distress.

**IT IS THEREFORE ORDERED** that Motion for Summary Judgment of Defendants St. John Health System, Inc. and Physicians Support Services, Inc. with Supporting Brief (Dkt. # 21) is **granted**. A separate judgment is entered herewith.

**DATED** this 2nd day of March, 2010.

*[signature]*
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[7] Plaintiff lived in her home until about January 2009, or a year and a half after she was fired. Dkt. # 28, Ex. A, at 25.